UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARVIN LOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:04CV989 RWS |
| ) | |
| DON ROPER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff, a Missouri prisoner, brings this § 1983 action pro se alleging that his placement on "meal loaf[1]," an alternative meal service, constitutes cruel and unusual punishment and violates his Eighth and Fourteenth Amendment rights. Defendants have moved for summary judgment, claiming that the undisputed material facts demonstrate that they are entitled to judgment as a matter of law. Plaintiff opposes summary judgment. Because plaintiff's constitutional rights were not violated by his placement on meal loaf, defendants are entitled to judgment as a matter of law. My analysis follows.

## Standards Governing Summary Judgment

In determining whether summary judgment should issue, I must view the facts

---

[1] Meal loaf is prepared like meat loaf and consists of meat, vegetables, fruit, potatoes, grains, dairy products and spices.

and inferences from the facts in the light most favorable to plaintiff. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Defendant has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once defendant has met this burden, plaintiff cannot rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. Under these standards I review the facts in this case.

## Undisputed Facts

In 2003, plaintiff was incarcerated in the administrative segregation unit of Potosi Correctional Center (PCC). During that time period at PCC, defendant Don Roper was the Superintendent, defendant Mike Layden was a Functional Unit Manager, and defendants Charles Wigger and Timothy Williford were Corrections Officers.

The Missouri Department of Corrections Institutional Services Policy and Procedure Manual provides that alternative meal service may be used in the

segregation unit as follows:

> 1. Alternate meals/serving methods may be used for offenders who:
>
>    a. throw food items or any item associated with food such as utensils, containers or trays, in a manner that is hazardous to herself/himself, staff or other offenders, or is destructive to state property,
>
>    b. do not return food utensils, containers, or trays, or
>
>    c. do not allow closure of the food port, spit, or throw urine, feces or semen, or improperly dispose of urine, feces or semen.

Under the progressive system of discipline outlined in Policy and Procedure Manual, the first time an inmate is placed on alternative meal service, he "will be served the regular meal on a styrofoam tray or tray liner for 3 meals." If the inmate receives a second food-related conduct violation within a 30-day period[2], the inmate "will receive a sack meal for 3 meals." The third time an inmate receives a food-related conduct violation within a 30-day period, the inmate "will be served a meal loaf." The first meal loaf assignment lasts for 9 meals. The inmate then receives

---

[2]The Policy and Procedure Manual defines the 30-day period to "include an offender's continuous time spent in the segregation unit regardless of assignment between temporary administrative segregation confinement, disciplinary segregation or administrative segregation." The time frame is calculated to "begin with the first incident and [] extend[s] 30 days after each subsequent incident until the offender has 30 days without an incident."

regular meals at the conclusion of his placement on alternative meal service. Finally, the Policy and Procedure Manual provides for any meal loaf assignments to be documented and approved by the Superintendent or his designee.

On September 17, 2003, plaintiff received a conduct violation for being disruptive and yelling at workers and staff about his diabetic meal while food trays were being served. As a result of this violation, plaintiff was placed in disciplinary segregation from September 24, 2003 to October 3, 2003. Plaintiff was also placed on alternative meal service, which meant that he was served his regular meal on a "soft" tray.[3] After three meals, he was taken off alternative meal service and given a regular tray. Although plaintiff does not dispute receiving the conduct violation, he could not specifically recall being given a soft tray.

On October 6, 2003, plaintiff received a conduct violation for refusing to give up his food tray and for flooding his cell. Plaintiff does not dispute this conduct violation. As a result of this violation, plaintiff was assigned to disciplinary segregation from October 7, 2003 to October 16, 2003 and received an extension of his alternative meal service at the request of defendant Wigger. Under this stage of alternative meal service, plaintiff received his meals in a brown bag.

On October 18, 2003, plaintiff received a third food-related conduct violation

---

[3]The "soft" tray is made out of styrofoam.

for having an orange peel and styrofoam cup in his cell.  Plaintiff does not dispute that he was not allowed to have these items in his cell, but he argues that he should not have been issued a conduct violation because he had a "medical emergency" and did not have a chance to remove them before he went to the infirmary. Defendant Williford issued the violation, and defendant Wigger requested an extension of plaintiff's alternative meal status for the conduct violation.  The request was granted, and plaintiff was accordingly placed on meal loaf.  Because plaintiff had been diagnosed as a non-insulin dependent diabetic while incarcerated, plaintiff's assignment to meal loaf was approved by the medical staff at PCC. Plaintiff grieved the issuance of the conduct violation, but after a hearing before the disciplinary hearing officer plaintiff was found guilty and the violation was upheld.

Plaintiff was assigned to meal loaf for nine meals -- from lunch on October 18, 2003 to lunch on October 21, 2003.  In his complaint, plaintiff alleged that the meal loaf contained feces and other unsanitary ingredients, but in his deposition he admitted that he did not eat it because he had "been told" by unnamed individuals that it was made from leftovers and he thought it smelled bad.  The undisputed evidence demonstrates that meal loaf is consistently prepared without substitution or variation in ingredients using the following standardized recipe:

    2 oz   Ground Beef

        Brown off in kettle and drain thoroughly
4 oz   Canned, Chopped Spinach
4 oz   Canned Carrots, Diced
4 oz   Vegetarian Beans
        Open and drain all vegetables well
4 oz   Applesauce
1 oz   Tomato Paste
½ c.   Potato Flakes
1 c.   Bread Crumbs
2 oz   Dry Milk Powder
1 tsp  Garlic Powder or Flakes

Combine beef and vegetables. Gradually blend in remaining ingredients until well combined. Mixture should be stiff but moist enough to spread. Each loaf should weigh 1 ½ lbs pre-cooked weight and be scaled to insure proper weight. Place mixture into a loaf pan that has been sprayed with pan release and lined with filter paper.

Each loaf should bake at 300 degrees F. in convection/steam oven for approximately 40 minutes or until the loaf reaches 155 degrees internal temperature.

Plaintiff also alleged that he was denied any food during this time period, but in his deposition he admitted that he was offered meal loaf at every meal but refused to eat it. Although plaintiff's complaint alleges that he became violently ill from eating the meal loaf, during his deposition plaintiff testified that he actually became ill from not eating. Plaintiff further alleges that he vomited blood, suffered from headaches and had suicidal thoughts because he was served meal loaf. Plaintiff did visit medical twice during his three-day assignment to meal loaf, but the records indicate that on his first visit he complained of dizziness and shortness of breath, but

no shortness of breath or other signs of distress were noted. On his second visit on October 20, 2003, plaintiff complained of side, stomach and head pain, as well as vision problems. He was advised that eating would alleviate his symptoms, but he still refused to eat the meal loaf. Plaintiff was returned to regular meals on October 21, 2003.

## Discussion

Plaintiff alleges that his placement on meal loaf constitutes cruel and unusual punishment and violates his Eighth and Fourteenth Amendment rights. To prevail on a Fourteenth Amendment due process claim, plaintiff must first demonstrate that he was deprived of life, liberty or property by government action. Phillips v. Norris, 320 F.3d 844, 846-847 (8th Cir. 2003). Because there is no allegation that he was deprived of life or property, plaintiff must identify a liberty interest to sustain his due process claim. The United States Supreme Court has recognized "that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). In Sandin, the Supreme Court disapproved a district court case suggesting that an inmate had a due process right not to be placed on food loaf. Id.

at 482-83.  Because plaintiff has no liberty interest to be free from placement on meal loaf, his due process claim fails as a matter of law.  Defendants' motion for summary judgment on plaintiff's due process claim will be granted.

The Eighth Amendment requires prison officials to provide humane conditions of confinement.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care."  Id.    To prevail on an Eighth Amendment claim, an inmate must prove both an objective and a subjective element.  Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998).  "First, the alleged deprivation, objectively, must be 'sufficiently serious'; the prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities'; or the prison official must incarcerate the inmate under conditions 'posing a substantial risk of serious harm.'" Id. at 807 (quoting Farmer, 511 U.S. at 834).  "Second, the prison official, subjectively, must act with 'deliberate indifference' to inmate health or safety."  Id. (quoting Farmer, 511 U.S. at 834).

Plaintiff's eighth amendment claim fails as a matter of law because the undisputed facts demonstrate that he received adequate food while on alternative meal service but chose not to eat it.  Although the complaint alleges the meal loaf was unsanitary, there is no evidence in the record to support that assertion.  Plaintiff

admitted that he refused to eat the food because he heard from "unnamed sources" that it was made from leftovers and did not like the way it smelled, not because he ate the meal loaf and found it to be unsanitary or discovered unsanitary ingredients in the meal loaf before he ate it. The only competent evidence in the record demonstrates that the meal loaf at PCC is consistently prepared in an appropriate manner using sanitary, nutritional ingredients, and plaintiff's unsupported, subjective belief that it is unwholesome is insufficient to create a genuine issue of material fact and preclude summary judgment on this issue.

Moreover, despite his allegations to the contrary plaintiff admitted in his deposition that he was never deprived of food but was served meal loaf for each of the nine meals he was on meal loaf status. However, plaintiff refused to eat the meal loaf because he found it unappetizing. That plaintiff disliked the food, however, does not mean that it was constitutionally inadequate.

Although plaintiff alleged that he became ill from eating meal loaf, in his deposition he admitted that he became ill from not eating. This, however, does not amount to an eighth amendment violation. Plaintiff's placement on meal loaf status was pre-approved by the medical staff because he was a non-insulin dependent diabetic, and there is no evidence in the record to suggest that the meal loaf was insufficient to meet plaintiff's daily nutritional needs or that it was an inappropriate

food assignment for a prisoner with plaintiff's medical history.  Moreover, plaintiff was never denied medical treatment while on meal loaf status and actually visited medical twice during that two-day period.  Plaintiff was advised that his symptoms would be alleviated if he ate his assigned meals, but he disregarded that advice and refused to eat the meal loaf.  Because plaintiff was offered adequate food and medical care, his eighth amendment claim fails as a matter of law.  Defendants' motion for summary judgment on plaintiff's eighth amendment claim will be granted.

Plaintiff has alleged that defendants failed to properly administer the alternative meal service policy.  The undisputed evidence in the record demonstrates that defendants placed plaintiff on meal loaf status in accordance with PCC policy, but even if they had not, the mere failure to follow an administrative procedure does not give rise to § 1983 liability as a matter of law.  See Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) (no § 1983 liability for violation of prison policy).  Because I have already determined that plaintiff's placement on meal loaf status did not violate his constitutional rights, plaintiff cannot avoid summary judgment merely by arguing that defendants' actions may have contravened an internal prison policy.

Defendants are entitled to summary judgment on all counts of the complaint.[4]

Finally, in several documents filed with this Court plaintiff alleges violations of state civil and criminal statutes. Because plaintiff never properly alleged these state law claims in his complaint, I do not believe that they are before me in this action. However, to the extent that plaintiff's pleadings can be construed to allege these state claims, I will decline to exercise supplemental jurisdiction over them. Under 28 U.S.C. § 1367(c)(3), district courts may decline jurisdiction over state claims as a "matter of discretion." Hassett v. Lemay Bank and Trust Co., 851 F.2d 1127, 1130 (8th Cir. 1988). "Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed . . . ." Gibson v. Weber, 433 F.3d 642, 647 (8th Cir. 2006); see also, United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (holding that if "the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). Therefore, this Court declines jurisdiction over any state law claims and does not examine their merits.

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#52] is granted, and plaintiff's § 1983 claims are dismissed with prejudice.

---

[4] Without a viable claim, plaintiff's request for injunctive relief necessarily fails as well.

**IT IS FURTHER ORDERED** that any state law claims asserted in the complaint are dismissed without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motions [#71 and #72] are denied.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 19th day of July, 2006.